LOUIS FRUNZI, complainant,

*v.*

MINA B. GROMER et al., defendants.

[Decided February 15th, 1929.]

*Mr. Harry L. Campton,* for the defendant Mulligan, administrator.

*Mr. George A. Henderson,* for the defendant Mina B. Gromer.

BACKES, V. C.

The proceeds of three promissory notes made to the order of Rudolph Felder, now deceased, aggregating $2,525, were paid into court under a decree of interpleader. The administrator of Felder's estate and Mina B. Gromer are striving for the fund—the latter claiming ownership of the notes by gift from Felder. The cause was referred to Special Master Lynch who found for Mrs. Gromer, to which the administrator filed exceptions.

The gift is satisfactorily established. Felder, of advanced age, lived with the Gromers as a member of the household for many years—a pay guest, and on Christmas Eve, 1925, during the festivities of exchanging gifts, he gave the three notes to Mrs. Gromer as his offering in grateful recognition of her past kindnesses to him. His estate, $16,000, consisting of bank accounts, building and loan shares, bonds and other securities, he gave or attempted to give to her on the day he went to the hospital where he died the following day, April 26th, 1926. Mrs. Gromer laid claim to the estate and retained one Mulligan, an attorney, to recover it, on a contingent

fee. There is proof that Felder intended she should have it, but as a valid and enforcible gift the case was weak. Two nephews of Felder were entitled to it if Mrs. Gromer failed. Mulligan had himself appointed administrator and made a settlement with Mrs. Gromer for $4,000, retaining $1,000, which he claims to have divided with the party who brought him the case and with an associate in his office, his brother-in-law, who he says succeeded him as attorney when he became administrator; to the former $250—the latter $500, retaining $250· for his services as attorney before assuming the administration. He took a general release from Mrs. Gromer and she surrendered the bank and building and loan books and other securities of which she had possession under the alleged gift, *causa mortis*. The attorney-administrator now claims the notes were included in the settlement and that they were not given up at the time because they were lost. This is not made out by the proofs. The thing Mrs. Gromer was seeking and which she retained Mulligan to get for her was the property under the imperfect gift *causa mortis*. The general release of all claims against the estate is particularly of this claim, notwithstanding the release for some unexplained reason recites the settlement of a claim for personal services of $4,732—in all probability fabricated by the attorney-administrator. Mrs. Gromer had no claim against the estate for the notes, for the ownership of them was already in her, and consequently the release was neither in terms nor in spirit inclusive. Mrs. Gromer's denial of the attorney-administrator's insistence, that at the settlement it was understood the notes, which at that time were mislaid, were also to be handed over, finds support in a "slip" made by the attorney-administrator while trying to justify his dual relation and the taking of a $1,000 fee out of the settlement. His statement was that it had been agreed that the amount recovered was to be split three ways, with the intermediary, himself and his office associate, and that when the settlement was made $250 was paid to the intermediary, $500 to the associate and $250 he retained for his services before he took over the administration. The three-way split, if that had been the arrangement, and it is denied, was wholly ignored. The "slip" is this:

In explaining the division of the fee he said: "I then gave Miss Colmar [intermediary] $250 of the $500 which I was to give her and I told her that when the case was settled and the notes were collected then I would see that she got the balance of the $500." The "balance" from what source? Surely only if the notes were collected by him for Mrs. Gromer, for she had done nothing for the estate to earn it. The estate was not obligated to her, and so it is quite apparent that at that time the attorney-administrator regarded the notes as belonging to Mrs. Gromer and the collection was to be made for her. It is also singular that if the attorney-administrator regarded the notes as part of the settlement and the property of the estate, he did not take an assignment or some writing testifying a transfer or surrender of the notes, at that time mislaid or lost. That would have been the ordinary and careful course, and the failure to take it indicates his then notion that they were not part of the settlement.

If, however, the attorney-administrator understood, as he now says he did, that the estate was to get the notes, contrary to his client's understanding, that they were not involved, it was because of his failure of duty to her, for had there not been a divided allegiance there would have been no misunderstanding as to her attitude. His client is inexperienced and was without the benefit of the disinterested advice she was entitled to. Her attorney presumed to act as advisor and adversary at the same time, and this by the consent of the next of kin nephews, who, of course, knew of her claim. He bargained for his client with the nephews and with her for the estate and not to her full advantage, it may be assumed. His avowal that he disengaged himself as her attorney when he took upon himself the office of administrator is not acceptable, and that he divided the fee with his alleged substitute is doubtful. The substitute at no time consulted his supposed client, advised with her or, as far as appears, rendered her any service. The result of the misunderstanding, if there was one, must be resolved against him. The master's finding that the settlement does not include the notes is amply supported by the proof and the reasonable inferences to be drawn from the established circumstances, and it is approved.

The case was tried on the theory of a gift. The statement of claim filed by Mrs. Gromer alleges a purchase of the notes. This may have been a misconception of counsel not chargeable to the client. The statement may be corrected.

Exceptions overruled.